## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| LEVENCE SIMPSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 04-1370 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Respondent. | ) |

### O R D E R

Before the Court is Petitioner, Levence Simpson's ("Simpson") Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person in Federal Custody [Doc. #1] and Additional Facts and Memorandum in Support of § 2255 Petition [Doc. #2]. For the reasons that follow, Simpson's § 2255 Motion will be DENIED.

### I.
### Background

In August 2001, Simpson was indicted on three counts of drug related charges. In count one, he was charged with a drug conspiracy involving more than one kilogram of heroin and fifty grams of cocaine base (crack) that allegedly resulted in a death. See 21 U.S.C. § 846. This subjected him to a statutory mandatory minimum sentence of ten years to life, which would be increased to twenty years to life if the death was proven. See 21 U.S.C. § 841(b)(1)(A). In counts two and three, Simpson was charged with possession with the intent to distribute crack

cocaine and heroin, subjecting him to statutory maximum sentences of twenty years.  See 21 U.S.C. § 841(b)(1)(C).

In September 2001, the Government served Simpson's trial attorney, Arthur Inman ("Inman"), with a notice pursuant to 21 U.S.C. § 851, indicating its intent to seek an enhanced sentence based on Simpson's prior felony drug conviction from 1993.  In turn, this subjected Simpson to a mandatory life sentence on count one, and statutory maximum sentences of thirty years on counts two and three.

In the face of these possibilities, Simpson professed his innocence and went to trial.  Eventually, a jury found him guilty on all three counts but did not find that the conspiracy resulted in a death.  As a result, Simpson no longer faced a mandatory life sentence on count one but, instead, faced twenty years to life in prison.  Accordingly, on October 21, 2002, Simpson was sentenced to 240 months on the conspiracy charge (count one), and concurrent 235-month terms on the two possession charges for crack cocaine (count two) and heroin (count three).

After unsuccessfully appealing his conviction and sentence to the Seventh Circuit Court of Appeals, see United States v. Simpson, 337 F.3d 905 (7th Cir. 2003), Simpson filed the instant § 2255 Motion on October 22, 2004.  All but two of his grounds for relief have been previously decided by Order of this Court.

See [Ct. Order of July 13, 2005, Doc. #29]. As a result, an evidentiary hearing was conducted on October 13, 2005, concerning the two remaining issues: (1) whether Inman rendered ineffective assistance of counsel by failing to reasonably investigate whether the 1993 Peoria County felony drug conviction belonged to Simpson, and by failing to apprise him of both the consequences that a prior felony drug conviction would have on his sentence and of the fact that the Government intended to enhance his mandatory minimum sentence pursuant to § 851; and (2) whether Inman rendered ineffective assistance of counsel by advising Simpson to reject a plea agreement allegedly proposed by the Government.

## II.
## LEGAL STANDARD

Claims of ineffective assistance of counsel are governed by the 2-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on his ineffective assistance of counsel claims, Simpson must first show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. In doing so, Simpson has a heavy burden to overcome because courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 690.

Furthermore, it is insufficient to simply prove that counsel's representation was constitutionally deficient; Simpson must also prove that he suffered prejudice as a result thereof. Id. at 694. In other words, Simpson must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. Therefore, to understand just how difficult it is to make out an ineffective assistance of counsel claim, all one need do is review cases in this circuit in which the 2-prong test has not been met. See, e.g., United States v. Cieslowski, 410 F.3d 353, 359 (7th Cir. 2005).

### III.
### ANALYSIS

To begin with, in his § 2255 Motion, Simpson argued that the 1993 Peoria County felony drug conviction in question was not his but, instead, belonged to another person named "Leola Simmons". However, at the start of the evidentiary hearing, Simpson admitted that "Leola Simmons" was simply his alias and that the 1993 felony drug conviction in question was indeed his. [Doc. #55, Evid. Hearing Tr. pgs. 3-8]. Of course, this confession did not come until after the Government threatened to call a fingerprint expert to the stand to testify that Simpson's fingerprints matched that of the individual named Leola Simmons. Therefore, Inman cannot be said to have rendered ineffective assistance of counsel by failing to investigate whether the

4

prior felony drug conviction belonged to Simpson -- since indeed, it did.

The Court must also point out that since the remaining issues to be decided are simply matters of "he say - she say," the veracity of the parties and witnesses are of key importance. Thus, Simpson's attempt to purposely mislead this Court into believing that the 1993 felony drug conviction was not his, at least until threatened with fingerprint analysis, does very little to establish the truthfulness of his character.

With this said, the Court will now turn to Simpson's allegations that Inman failed to inform him that the Government filed a § 851 notice and that a prior felony drug conviction could be used to trigger an enhancement of his mandatory minimum sentence under count one. At the evidentiary hearing, Simpson testified that Inman told him that he faced no more than ten years on count one and five years on counts two and three. See [Evid. Hearing Tr. pgs. 13-14, 21-22, 30]. Simpson further testified that Inman never told him that the Government was seeking an enhancement of his mandatory minimum sentence under § 851 as a result of his 1993 Peoria County felony drug conviction. See [Evid. Hearing Tr. pgs. 8-11]. In fact, Simpson stated that he was unaware that a prior felony drug conviction could be used to enhance his sentence at all. See [Evid. Hearing Tr. pgs. 11, 15].

5

Because of the major ramifications that a prior felony drug conviction can have on a defendant's possible sentence, it only seems natural to this Court that a reasonable attorney would have asked his or her client whether the prior conviction listed in a § 851 notice was in fact the client's conviction although it was listed under a different name. Here, the Court does not believe that Inman conducted such an inquiry.

At the evidentiary hearing, Inman testified that he did not recall that the 1993 conviction in question was listed under an alias and did not become aware of this fact until sometime after the trial had already commenced. See [Evid. Hearing Tr. pgs. 59, 67-70]. Furthermore, although he initially testified on cross-examination that he asked Simpson whether he had a 1993 conviction, see [Evid. Hearing Tr. pg. 69], he later testified that he did not recall ever asking Simpson whether he had a prior felony drug conviction, and to the best of his recollection he simply assumed that the conviction listed in the § 851 notice belonged to Simpson. See [Evid. Hearing Tr. pg. 73].

Thus, it appears that Inman never bothered to ask Simpson whether the 1993 Peoria County felony drug conviction was in fact Simpson's conviction; instead, he simply assumed that it was. While such conduct would likely constitute ineffective assistance of counsel if the conviction used to enhance

6

Simpson's sentence did not in fact belong to him; this, however, is not the scenario. As discussed above, Simpson has conceded that the conviction in question was indeed his. Therefore, the real question for purposes of the performance prong under the <u>Strickland</u> test is whether Simpson was made aware of the fact that if he had a prior felony drug conviction he would face a statutory mandatory minimum sentence of twenty years to life on count one, which would be enhanced to a mandatory life sentence if the jury was to find that the conspiracy resulted in a death.

While Inman may have failed to specifically discuss the 1993 Peoria County felony drug conviction with Simpson, it does not appear to this Court that he failed to discuss the consequences that such a conviction would have on Simpson's potential sentence. When asked on direct examination whether he actually told Simpson about or showed him the exact § 851 notice that he had received from the Government, or whether he simply explained the effect that the notice would have on Simpson's sentence, Inman gave the following testimony:

> To the best of my recollection, I told him of the effect, that I had received such a notice and that it meant that if he was convicted he was facing a minimum of 20 years.[1] I don't think that Mr. Simpson is a

---

[1] The Court points out that Inman's statement that Simpson "was facing a minimum of 20 years[,]" simply addressed the affect that the § 851 notice had on Simpson's potential sentence. Both, immediately prior to and after this statement, Inman testified that he also explained to Simpson that he was facing an enhanced mandatory life sentence as a result of the death allegation. <u>See</u> [Evid. Hearing Tr. pgs. 53, 55].

>strong reader, and I'm not sure that he would appreciate the import of a legal document. I figured it was my job to explain that to him.

[Evid. Hearing Tr. pg. 54]. Inman further testified that he never told Simpson that if he went to trial he would be facing no more than ten years; instead, he stated that he discussed with and explained to Simpson the statutory enhancements that he would be facing. See [Evid. Hearing Tr. pg. 53-54].

But even assuming arguendo, that Inman's performance was constitutionally deficient, Simpson cannot show that he suffered prejudice as a result thereof. That is, he is unable to meet his burden of establishing that, but for counsel's unprofessional errors, there is a reasonable probability that he would have received a shorter sentence. See Strickland, 466 U.S. at 694.

This is evident by the fact that although Simpson claims that he would have pled guilty rather than gone to trial if he would have known that he was facing twenty years to life on count one, such a "blind" guilty plea by itself would not have resulted in a sentence shorter than the one he actually received. See United States v. Travis, 294 F.3d 837, 840 (7th Cir. 2002) (recognizing that a timely guilty plea by itself does not entitle a defendant to a reduction in his offense level for acceptance of responsibility). Simpson's sentence on count one was 240 months (or twenty years). Therefore, he received the

8

statutory mandatory minimum sentence, which he was subject to regardless of whether he went to trial or pled guilty. In this sense, he definitely had nothing to lose by going to trial.

The only other possibility in which Simpson could demonstrate prejudice is by showing through objective evidence that he would have requested Inman to negotiate a possible plea agreement in exchange for a lesser sentence, and that the Government would have accepted such a plea agreement. Simpson, however, has failed to put forth such evidence. In fact, Inman testified that Simpson refused to allow him to enter plea negotiations with the Government because Simpson believed he was innocent of the charges. See [Evid. Hearing Tr. pg. 70-73].

More importantly, even if Simpson could show that he would have requested for Inman to seek a plea agreement, "it is axiomatic that the government is not bound to discuss, much less enter into, a plea agreement" with a criminal, especially a criminal who choose to "'poison the community with the sale of illegal drugs.'" United States v. Hall, 212 F.3d 1016, 1022 (7th Cir. 2000) (quoting United States v. O'Grady, 812 F.2d 347, 355 (7th Cir. 1987)). As a result, Simpson cannot meet the prejudice prong of the Strickland test and his claim must fail.

Finally, to make out his claim that Inman rendered ineffective assistance of counsel by advising him to reject a plea agreement, not only must Simpson establish through

9

"objective evidence" that a proposed plea agreement actually existed, but he must also show that "there is a reasonable probability that he would have accepted the alleged proposed plea agreement absent defense counsel's advice." Paters v. United States, 159 F.3d 1043, 1046 (7th Cir. 1998) (citing Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991)). Objective evidence requires something more than a petitioner's self-serving testimony. Id. at 1047 n.5 and n.6. As the Paters court explained, one way a petitioner can meet the "objective evidence" requirement would be to submit supporting testimony from either his defense counsel or the Assistant U.S. Attorney. Id. at 1046 n.6.

At the evidentiary hearing, Simpson testified that four months prior to trial, Inman advised him to reject a plea agreement allegedly proposed by the Government. See [Evid. Hearing Tr. pg. 12-13]. According to Simpson, the Government offered to forgo prosecution on the count one conspiracy charge in exchange for his guilty pleas on counts two and three. See [Evid. Hearing Tr. pg. 13-14, 31]. Simpson testified that there were no other terms of the proposed plea agreement and that no specific amount of time of imprisonment was discussed or offered. See [Evid. Hearing Tr. pg. 13, 31].

However, other than Simpson's self-serving statements, there is absolutely no objective evidence to indicate that a

proposed plea agreement was ever on the table. In fact, Inman adamantly testified that not only did the Government never offer a proposed plea agreement, but that he never even engaged in plea negotiations with the Government. See [Evid. Hearing Tr. pg. 51, 62, 71-73]. In addition, Simpson proffers no testimony on behalf of the U.S. Attorney's Office that would establish the existence of the alleged proposed plea agreement. Therefore, Inman's performance cannot be said to have been constitutionally deficient.

Again, assuming arguendo, that Simpson was able to show that a proposed plea agreement did exist and that Inman's advice to reject it was constitutionally deficient, he still cannot show "(1) through objective evidence that (2) there is a reasonable probability that he would have accepted the alleged proposed plea agreement absent defense counsel's advice." See Paters, 159 F.3d at 1046. This is more than apparent by the fact that the alleged proposed plea agreement still would have required Simpson to plead guilty to counts two and three, subjecting him to possible thirty years sentences. Therefore, absent objective evidence to the contrary, there is no reason for this Court to believe that Simpson would have taken such a deal.

   IT IS THEREFORE ORDERED that Simpson's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person in Federal Custody [Doc. #1] is DENIED.

ENTERED this  9th  day of May, 2006.

                                                /s/ Joe B. McDade\_   \_
                                                   Joe Billy McDade
                                        United States District Judge